BEFORE THE JUSTICES AT CHAMBERS.

## *In re* THE TREASURER.

APPEAL FROM THE AUDITOR OF THE TERRITORY.

SUBMITTED MAY 18, 1904.                    DECIDED JUNE 4, 1904.

FREAR, C.J., GALBRAITH AND PERRY, JJ.

The Treasurer of the Territory may under certain circumstances con-
sult private counsel as to his official duties and employ them to
institute a suit in his name to sustain his convictions of his official
duties and obligations and pay reasonable compensation to such
counsel out of the appropriation for "incidental" expenses of his
office.

### OPINION OF THE COURT BY GALBRAITH, J.

The Treasurer of the Territory appeals from the ruling of the
Auditor refusing to issue a warrant on the appropriation for "in-
cidentals" of the Treasurer's office covering an expense of
$500.00 for attorneys fees which the Treasurer incurred in a
suit against the Superintendent of Public Works.

The suit in which this expense was incurred was an injunction
proceeding brought to restrain the Superintendent of Public
Works from turning over to the county authorities, under the
late county law, the Honolulu Water Works and appurtenances,
the Treasurer taking the position that the county law was void
and that the contemplated action of the Superintendent of Pub-
lic Works was illegal; that the property produced a large reve-
nue to the Territory and as it was his duty under the law to col-
lect all revenue due the Territory it was his duty to bring this

suit to prevent the loss of revenue to the Territorial Treasury that would result from such transfer.

It is contended on behalf of the Auditor (1) that the Treasurer was not a party in interest in the issue of said suit and therefore had no right to bring the same; (2) that the Attorney General is the authorized legal representative of the Territory and should represent its executive officers unless good cause is shown for his not doing so; (3) that the action of the Treasurer in employing independent counsel was unwarranted and illegal; (4) that the fee of five hundred dollars is excessive.

Had the Treasurer such an interest in the issue involved in that injunction suit as to enable him to maintain the same as party plaintiff?

Section 72, Organic Act, creates the office of Treasurer of the Territory of Hawaii and reads: "That there shall be a treasurer, who shall have the powers and duties of the minister of finance and those of the powers and duties of the minister of the interior which relate to licenses, corporations, companies, and partnerships, business conducted by married women, newspapers, registry of conveyances, and registry of prints, labels, and trade marks under the laws of Hawaii, except as changed in this Act and subject to modification by the legislature."

Section 655, C.L., prescribes some of the duties of the minister of finance now devolved upon the Territorial Treasurer, and under which his obligation and duty to bring the suit is placed, as follows:

"It shall be the duty of the minister of finance to have a general supervision of the financial affairs of the Republic (Territory) and to faithfully and impartially execute the duties assigned by law to his department. He is charged with the enforcement of all revenue laws; the collection of duties on foreign imports; the collection of taxes; the safe-keeping and disbursement of the public moneys, and with all such other matters as may, by law, be placed in his charge."

If the Treasurer believed, in good faith, as is alleged, that the contemplated action of the Superintendent of Public Works would injuriously affect the revenues of the Territory then it is

clear that it was his duty under the law to bring the suit and he had such an interest therein as to enable him to maintain the same as plaintiff. This conclusion finds support in the recent decision of this court, *Keola v. Hale, ante* 419, holding that a tax collector may sue in his own name for taxes due the Territory whether such taxes were assessed by him or his predecessor in office.

The Attorney General is the law officer of the Executive department of the Territorial Government. It is his duty to appear on behalf of the Territory in all courts of record in all criminal cases and in civil cases in which the Territory is a party or interested. (Section 1013, C.L.). The Territory was not a party to this suit in which the expense in question was incurred by the Treasurer nor does it appear that the Territory was directly interested therein as said by the Attorney General in his letter to the Auditor advising a refusal to pay the claim, "This suit, as it turns out, was a private matter", meaning no doubt that the suit arose out of a difference of opinion between the Treasurer and the Superintendent of Public Works as to their respective duties under the law.

Even if it were admitted that the Territory was interested in this suit it does not follow that this contention of the Auditor can be sustained for the reason that this suit grew out of a difference of opinion between two executive officers of the Territory. The Attorney General neither in person nor by deputy could appear for both sides. He could only represent one of the parties and as he did appear for the Superintendent of Public Works the Territory and the public had the benefit of his services in the controversy. The well-known attitude of the Attorney General in regard to the law of the question at issue (the legality of the county law) placed his views in antagonism to those entertained by the Treasurer and under such circumstances it would have been a useless form for the Treasurer to have sought the "advice and counsel" of the Attorney General before employing private counsel to represent his view of his official duty under the law.

The statute also provides that it shall be the duty of the Attorney General to "give advice and counsel", "without charge" to all executive officers of the Territory "when called upon" (Section 1015, C.L.).

This statute makes provision for legal advice and counsel, without charge, to all executive officers of the Territory but does not pretend to compel any officer to seek such "advice and counsel", much less to make the opinion of the Attorney General the controlling legal authority for such officials. The contention that the Attorney General has the right to insist that all executive officers first seek his "advice and counsel" before consulting private counsel finds as little support in the statute as the claim that he has the right to supervise the expenditures of the fund appropriated for the "incidental" expenses of the Treasurer's office.

We take it to be clear, under the circumstances of this case, that the Treasurer had the right to consult and employ private counsel to bring the injunction suit and to pay them reasonable compensation out of the "incidental" appropriation for his office.

The evidence given at the hearing fully established the reasonableness of the fee of five hundred dollars.

It follows that the appeal must be sustained and that an order will issue if necessary directing the Auditor to issue the warrant as requested.

*E. C. Peters,* Deputy Attorney General, for Auditor.

*Kinney, McClanahan & Cooper* for Treasurer.

### CONCURRING OPINION OF PERRY, J.

The view that the Treasurer had not under the law sufficient interest or authority to enable him to bring and to maintain the suit against the superintendent of public works, is, I am inclined to think, without so deciding definitely, correct, but, even if it is, it does not follow, as it seems to me, that the expenditure in question must be disallowed. If the treasurer believed that he had the necessary authority and that the duty devolved upon him to bring the proceedings and thus protect the territorial revenues, he was justified in consulting those learned in the law as to the

correctness of his views and, upon being advised that such views were correct and that it was his duty to bring the suit, to employ legal assistance to prosecute it. That the view of the treasurer and of counsel was incorrect, if it was, does not affect the ques· tion now before us. It cannot be said that the law is so clearly to the contrary as to indicate that the treasurer or his attorneys did not act or could not have acted in good faith. Under the circumstances of this particular case concerning the previously expressed views of the attorney general upon the issue then involved and the position taken by that official in defending the county law, and in view of the fact that the controversy was be tween two officials of the government and that the attorney gen eral could not represent both sides, the treasurer was authorized and justified in seeking such advice from private counsel. To have first consulted the attorney general would have been a useless form.

The total appropriation of $9000 in two lump sums for "Incidentals Treasurer's Office" in itself shows that the legislature intended that some discretion should be left to the treasurer in determining what expenses should be paid out of that item. That discretion cannot be said to have been exercised arbitrarily or unreasonably in this instance, in the payment for legal advice sought upon a point as to which the officer was in doubt and assistance in the institution and conduct of the suit. The law does not require that the person appointed to fill the office of treasurer shall have had special training in the law, and Congress and the legislature must be deemed to have known that questions might present themselves to that officer for a proper solution of which the advice of an attorney would be proper and essential. Ordinarily such advice and assistance should be sought of the law officer of the government, appointed and paid for that purpose, but in this instance, as already pointed out, there was justification for seeking it from other counsel.

The fee in controversy was reasonable.

Mr. Chief Justice Frear concurs in the conclusion.

# Decisions Announced without Opinions During the Period Covered by this Volume.